UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID FREEMAN,<br>*Plaintiff*,<br><br>v.<br><br>CITY OF NEWTON, NEWTON POLICE DEPARTMENT, GEORGE MCMAINS, Chief of Police, Newton Police Department, In his official capacity, NEWTON DISTRICT COURT, HENRY M. SCHULTZ, Clerk-Magistrate of the Newton District Court in his official Capacity, and ANDREA JOY CAMPBELL, Attorney General of the Commonwealth Of Massachusetts in her Official Capacity,<br><br>*Defendant*. | C.A. No. 1:25-cv-13786-LTS |

**<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS CITY OF NEWTON, NEWTON POLICE DEPARTMENT, AND GEORGE MCMAINS MOTION TO DISMISS</u>**

The Defendants, City of Newton, the Newton Police Department and George McMains in his official capacity as former Chief of Police of the Newton Police Department ("the Newton Defendants") respectfully move for dismissal of this action under F.R.C.P. Rule 12(b)(6). Plaintiff David Freeman is a serial pro-se litigant who has filed a relentless number of frivolous lawsuits and pleadings against the City of Newton over the course of the last eight months, all of which have asserted substantially the same claims that he is raising in the current lawsuit. Several of Mr. Freeman's prior complaints have been disposed of on the merits with prejudice at the pleadings

stage. Each of Mr. Freeman's prior lawsuits have included a flurry of filings purporting to request preliminary or injunctive relief as well, and all such motions to date have been denied. As a result, the claims he is raising in the current suit are firmly barred by *res judicata* and subject to dismissal. Beyond the topics of claim and issue preclusion, his case is also barred by the *Younger* abstention doctrine, the Anti-Injunction Act 28 U.S.C. § 2283, and by F.R.C.P. Rule 12(b)(6) as it fails to state any civil rights claim under the standard set forth for such claims against government entities in *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 685, 694 (1978).

Accordingly, and for the foregoing reasons, the City of Newton, the Newton Police Department, and George McMains respectfully request that this lawsuit be dismissed.

## I. BACKGROUND

### A. Factual Background As Set Forth In the Complaint

Construing the complaint generously in Plaintiff's favor, per the Court's rules for responding to *pro se* litigants, this case describes a series of interactions between Mr. Freeman, the Newton Defendants, the Newton District Court, and the City of Watertown arising out of or associated with an alleged burglary at his business, and subsequent interactions between Mr. Freeman, the police, and the court in the course of proceedings under an M.G.L. ch. 209A abuse prevention order.

Mr. Freeman's complaint begins with a claim that the police defendants failed to sufficiently investigate a burglary that took place at his business, Boston Jeepz, Inc., on December 2, 2024. Complaint, at ¶¶ 14-15, 21. He then appears to claim that he petitioned the Newton District Court for some, unspecified, relief associated with this burglary on December 3, 2024, and that somehow, his request for relief was instead used to "convert[] a civil summons" into an "armed enforcement action" by the Newton Police on December 4, 2024. Id. ¶¶ 16, 18. Elsewhere in his

Complaint, Freeman alleges that the December 4, 2024 incident involved "7 to 9 Newton Police officers, including senior command-level staff, forcibly entering into private property without a warrant." Complaint, at p. 2. Freeman claims that the Newton Defendants altered evidence, including police reports to "conceal the true sequence of events" of this alleged enforcement action and have withheld other evidence like transcripts of the alleged December 3, 2024 hearing, despite his requests for these materials. Id. ¶ 20. His final reference to the alleged burglary is in Paragraph 21 of his complaint, where he claims that his ex-wife Tara Freeman admitted to possessing "stolen servers and corporate assets" but that "[d]espite this admission, Defendants still took no investigative action to recover Plaintiff's property." Complaint, at ¶ 21.

At this point, the narrative timeline of Mr. Freeman's complaint breaks down, and he begins making vague and non-specific allegations of misconduct against all Defendants. Mr. Freeman claims he has provided the Defendants with purported "comprehensive evidentiary packets" detailing various injustices against him, but that instead of investigating those allegations, the Defendants began criminal proceedings against him. Id. ¶ 23. He explains that he has been served with multiple documents associated with alleged violations of an abuse prevention order, including notices of a hearing on applications for criminal complaints against him for these violations. Id. at ¶¶ 23-25, 28. He advances a series of arguments about why these criminal processes should be considered void or unconstitutional, including claims that he should not be subject to Massachusetts criminal proceedings while residing in Florida, id. at ¶¶ 23, 25, 28, that he should not be subject to an abuse prevention order when he is suing the applicant for the order in another forum, id. at ¶ 31, that there is a conflict of interest because Ms. Freeman allegedly used to work for the NPD in some capacity, id. at ¶ 29, and that the 209A order is invalid because one of the complainants against him was subject to prior unfavorable civil service proceedings, id. at 26.

Mr. Freeman's complaint concludes with the following counts: (I) Violations of Fourteenth Amendment Due Process Rights against the Newton Defendants and the Newton District Court Clerk-Magistrate; (II) Substantive Due Process violations against the Newton Defendants; (III) First Amendment Retaliation and Interference against the Newton Defendants, and the Newton District Court Clerk-Magistrate; (IV) Denial of Access to Courts against the Newton Defendants and the Newton District Court Clerk-Magistrate; (V) Violations of Equal Protection for selective non-investigation against the Municipal Defendants; (VI) Declaratory Judgment against all defendants; (VII) Injunctive Relief against all defendants; and (VIII) Obstruction of Federal Judicial Proceedings against all named Defendants. His complaint very clearly states that he is "seeking only declaratory and injunctive relief . . . he does not seek damages." Complaint, at p. 1. The declaratory relief he requests is an order from this court stating that an "actual controversy exists regarding the validity and enforceability of the Massachusetts criminal process directed at Plaintiff" and that the "criminal process issued against him is void and unenforceable," as well as injunctive relief from criminal enforcement associated with the events of December 2-12, 2024.

This case was originally filed in the Middle District of Florida, but was removed by the Court *sua sponte* on review of Mr. Freeman's motion to proceed *in forma pauperis* on the grounds that the Middle District of Florida was not the correct venue for this action, as "other than contacting Mr. Freeman at his home in Florida regarding court proceedings in Massachusetts, the actions that Mr. Freeman claims violated his rights all occurred in Massachusetts."

**B. Related Litigation**

Mr. Freeman has filed at least four other lawsuits against the City of Newton to date. Each lawsuit raised substantially the same claims repeated throughout the current Complaint. While this motion is brought under Fed. R. Civ. Pro. 12(b)(6), the Court may supplement its understanding

and consideration of the facts alleged in the Complaint with materials about which it may take judicial notice. In the First Circuit, a court may take judicial notice of the decisions of other courts both for the broad purposes of confirming prior procedural history, and for confirming the contents of prior filings and judicial decisions. See, e.g., *Lopes v. Riendeau*, 177 F. Supp. 3d 634, 666 (D. Mass. 2016) (and cases cited therein).

The Newton Defendants requests that this Court take judicial notice of the claims Mr. Freeman has raised in his earlier lawsuits, as well as the orders from each court disposing of his allegations. A summary of these docket names, their allegations, and their dispositions are included below. Taken together, the claims made in all of these pleadings can supplement this Court's understanding of the present suit. Specifically, the narrative of allegations in each of these documents makes it clear that Mr. Freeman is currently undergoing a contentious divorce that has led to a cascading series of abuse prevention orders, and corresponding criminal complaints, summons, and hearings, including those mentioned in his present complaint. All of Mr. Freeman's lawsuits to date have alleged that the Newton Defendants acted unlawfully in the service of court documents and summons associated with this abuse prevention order, specifically raising civil rights violations associated with the service of documents on Ms. Freeman on December 4, 2024, and have failed to investigate various allegations against the abuse prevention order complainants raised by Mr. Freeman. All of his cases have also invariably advanced the same claims of concealed evidence, conflicts of interest, and due process violations in the Newton District Court proceedings that are included in the present suit.

Mr. Freeman's prior lawsuits against the City of Newton are as follows:

1. *In Re: David A. Freeman*, Massachusetts Supreme Judicial Court, No. SJ-2025-0127 (2025) ("the SJC Case"). Mr. Freeman petitioned the Supreme Judicial Court for relief from actions and orders of the Newton District Court and Newton Police Department associated with the NPD's service of a court document at his ex-wife's home on December

4, 2024, and the subsequent December 10, 2024 Newton District Court hearing. This petition incorporated his myriad of allegations that are also contained in the current lawsuit about tainted process and procedure, including his allegations of conflicts of interest and retaliation, his claim that the NPD and/or the Newton District Court are suppressing court transcripts, allegations of retaliation, and his challenges to the bases of certain restraining orders. The Supreme Judicial Court denied Mr. Freeman's petition via order dated June 2, 2025. Exhibit 1, SJC Complaint. Exhibit 2, SJC Disposition.

2. *David Freeman v. Newton Police Department et al.*, United States Court District of Massachusetts, C.A. No. 1:25-cv-11187-MJJ (2025) ("the D. Mass. Case"). Mr. Freeman claimed that the NPD's service of a summons document on Ms. Freeman at her home on December 4, 2024 constituted a violation of his civil rights, and that statements made by NPD officers while serving this document constituted defamation. Judge Myong J. Joun granted the Defendants' F.R.C.P. Rule 12(b)(6) motion on June 13, 2025 holding that Freeman did not have standing to pursue civil rights claims associated with the December 4, 2024 incident, and that judicial notice of records from the Newton District Court demonstrated his claim of defamation was meritless. Exhibit 3, D. Mass. Complaint, Exhibit 4, D. Mass. Disposition.

3. *David A. Freeman v. Newton Police Department et al.*, Middlesex Superior Court, C.A. No. 2581-CV-01115 (2025) ("the Superior Court Case"). Mr. Freeman filed another suit alleging substantially the same claims raised in the above referenced D. Mass. Case and SJC Case. The Court granted the Defendants' motion to dismiss on the merits on August 14, 2025. Exhibit 5, Middlesex Superior Court Complaint, Exhibit 6, Middlesex Superior Court Disposition.

4. *David A. Freeman v. City of Newton, et al.*, United States Court Middle District of Florida, C.A. No. 8:25-cv-02130-SMD-AAS (2025) ("the Florida Case"). Mr. Freeman filed a case in the Middle District of Florida advancing substantially the same allegations raised in the present lawsuit. A magistrate reviewing Mr. Freeman's complaint subject to *in forma pauperis* review recommended dismissal in part because the merits of Mr. Freeman's complaint failed to state a claim upon which relief may be granted. Mr. Freeman voluntarily dismissed the action before any final action was taken on the Magistrate's report and recommendation. Exhibit 7, Florida Middle District Complaint, Exhibit 8, Florida Middle District Report and Recommendation.

In addition to these four lawsuits, Mr. Freeman has also filed a series of lawsuits arising out of the same set of operative facts against a variety of other parties, including those who are mentioned in or named as co-defendants in the current action. He has previously sued the City of Watertown raising claims associated with the alleged burglary of his business that are repeated in the present lawsuit. *In Re: David Freeman*, SJC-2025-0119, Massachusetts Supreme Judicial

Court (2025) (petition denied); *Freeman v. Watertown Police Department et al.*, C.A. No. 1:25-cv-11027, United States Court District of Massachusetts (2025) (motion to dismiss pending).

He has also sued the Newton District Court and its judges, alleging procedural and substantive due process violations, civil rights violations, and violations of the Americans with Disabilities Act associated with the various abuse prevention order proceedings referenced throughout the current complaint, including both the specifically identified December 3, 2024 and December 10, 2024 hearings. See, e.g., *Freeman v. Newton District Court et al.*, C.A. No. 1:250-cv-011027, United States Court District of Massachusetts (2025) (pending); *In Re: David Freeman*, SJ-2025-0386, Massachusetts Supreme Judicial Court (2025) (petition denied).

Mr. Freeman also named his ex-wife Ms. Tara Freeman and his stepson Zachary Hurley as Defendants on nearly all of the above listed actions, and separately raised claims against them associated with the alleged burglary of his business in at least two federal actions. See *Freeman v. Freeman*, Middlesex Superior Court, C.A. No. 2581-CV-00881 (2025) (dismissed); *Freeman v. Freeman*, C.A. No. 8:25-cv-01803-KKM-LSG, United States Court Florida Middle District (2025) (dismissed).

Mr. Freeman's litigiousness has extended further to allegations against his ex-wife's divorce attorney as well (*Freeman v. Garballey-James et al.*, C.A. No. 1:25-cv-12789-AK, United States Court District of Massachusetts (2025) (pending), see also *In Re: David Freeman*, SJ-2025-0196, Massachusetts Supreme Judicial Court (2025) (petition denied)), and he has most recently attempted to sue the Sheriff of Pinellas County Florida and the Florida Attorney General's Office after he was detained in Florida for extradition to Massachusetts in association with his repeated violations of M.G.L. Ch. 209A. *Freeman v. Pinellas County* 8:26-cv-00306-SDM-TGW, United States Court Florida Middle District (2025) (dismissed). This most recent pleading states that Mr.

Freeman was arrested in Florida on January 22, 2026, allegedly in connection with Massachusetts warrants referenced in the present complaint. See, e.g., Exhibit 9, Complaint, *Freeman v. Pinellas County*, C.A. No. 8:26-cv-00306-SDM-TGW, United States Court Middle District of Florida, ¶¶ 17-21. Documents Mr. Freeman has filed in the present lawsuit as purportedly "supplemental evidentiary" records confirm that he is currently being held in Pinellas County, awaiting extradition to Massachusetts on a series of five warrants issued by the Ayer District Court. *See* Dkt. No. 63-1.

## II. STANDARD OF REVIEW

As the Plaintiff is proceeding pro se, his pleadings are held to a less stringent standard than a pleading drafted by an attorney. *Restucci v. Clarke*, 669 F. Supp. 2d 150, 154-55 (D. Mass. 2009); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("a document filed pro se is to be liberally construed"). Nevertheless, the plaintiff is still required to pled allegations that sufficiently establish an actionable claim, and must comply with procedural and substantive rules of law. *Clarke*, 669 F. Supp. 2d at 155. The Complaint must contain sufficient factual matter that, if accepted as true, states a "claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal is appropriate when the "complaint fails to even suggest an actionable claim" even when construed liberally in the plaintiff's favor. *Overton v. Torruella*, 183 F. Supp. 2d 295 (D. Mass. 2001).

## III. ARGUMENT

Mr. Freeman's Complaint is subject to dismissal for multiple independently sufficient reasons. First, his claims against the Newton Defendants are barred by *res judicata*, as both the Massachusetts Supreme Judicial Court and Middlesex Superior Court have already reviewed and dismissed 42 U.S.C. § 1983 claims Mr. Freeman raised arising out of the same set of operative

facts alleged in the present complaint. Second, where Mr. Freeman's complaint states it is solely requesting declaratory and injunctive relief from underlying criminal proceedings, it is barred by the Anti-Injunction Act, 28 U.S.C. § 2283, and principles of abstention under *Younger v. Harris*, 401 U.S. 37 (1971). Finally, Mr. Freeman's complaint is subject to dismissal under F.R.C.P. 12(b)(6) for failure to state a claim against which relief may be granted on the grounds that it fails to articulate facts sufficient to establish the minimal elements of each of his alleged causes of action.[1]

**A. Mr. Freeman's Claims Are Barred By Res Judicata.**

Mr. Freeman has already had ample opportunity to litigate his claims against the Newton Defendants in other forums, and all such cases to date have been dismissed. Where at least two of these dismissals were on the merits, *res judicata* prevents him from raising these allegations again in this new lawsuit. *See, e.g., Hughes v. McMenamon*, 379 F. Supp. 2d 75, 78 (D. Mass. 2005) ("Plaintiff's claims in the instant action are, as [Defendant] notes, nothing more than a rehash – for the *third* time – of frivolous allegations that have already been rejected by this court.").

*Res judicata* is intended to preclude not only claims that were decided in a prior case, but

[1] There is also a question of whether Mr. Freeman has standing to pursue many of the claims advanced in his current lawsuit. The Newton Defendants believe this case can and should be resolved on other grounds, it is nevertheless necessary to briefly touch upon this issue for the sake of preserving this challenge.

First, his prior D. Mass. lawsuit *Freeman v. City of Newton*, C.A. No. 1:25-cv-11187-MJJ was dismissed for failure to allege the "irreducible constitutional minimum of standing" with specific regard to the incident alleged to have occurred on December 4, 2024. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The present case does not restate the Fourth Amendment claims raised in the D. Mass. Case, but nevertheless reasserts Mr. Freeman's version of events from this date, and claims this alleged incident is "central to establishing Newton's ongoing intent to engage in bad-faith legal manipulation." Complaint, at 2. He then goes on to list this incident as the factual basis of Count II of his Complaint. Count II, and all other counts to the extent they incorporate or rely upon the alleged December 4, 2024 incident, is therefore subject to dismissal for lack of standing.

With this foundation, standing is questionable on Mr. Freeman's other claims as well. While one may wish to assume that Mr. Freeman was a party to the District Court proceedings he is challenging in this complaint, he has not actually stated as much, and he has a history of attempting to litigate conduct he was not personally involved in. It is not clear from the pleadings if Mr. Freeman has standing to raise any the challenges to the Newton District Court's alleged December 3 and December 10, 2024 hearings set forth in Count I and Count VI. Where the Plaintiff bear the burden to establish standing, his vague complaint fails to meet the threshold to advance these claims. *Lujan*, 504 U.S. at 561.

also claims that *could have* been asserted in an earlier case. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). For *res judicata* to apply, three things must be true: (1) the prior case or cases must have ended in a final judgment on the merits; (2) there must be sufficient identity between the causes of action asserted in the relevant lawsuits; and (2) there must be sufficient identity between the parties in the relevant lawsuits. *Hughes*, 379 F. Supp. 2d at 78. The specific claims raised to not need to be identical, "sufficient identity" merely means that the causes of actions arise out a "common nucleus of operative facts." *Id.* at 79. In other words, a litigant cannot, having failed to allege conduct was wrongful under a particular theory, simply bring a new suit claiming the same conduct was wrongful under a slightly different theory. If a claim "could have been asserted" in an earlier action decided on the merits, such claims are barred by *res judicata*. *Id.* Notably, while *res judicata* is an affirmative defense, it is appropriately raised on a 12(b)(6) motion when the facts that establish the defense are "conclusive and definitely ascertainable" from the allegations of the complaint and matters of which the Court may take judicial notice. *United States v. Raytheon Company*, 334 F. Supp. 519, 523 (2018).

Three of Mr. Freeman's prior cases – all except the Florida Case – ended with a final decision that was at least partially on the merits of the Civil Rights claims he is raising again in the present action. The SJC Case included a final denial of Mr. Freeman's petition for relief from purported constitutional errors committed by the lower courts, and the Superior Court case was affirmatively dismissed on both *res judicata* grounds, and for failure to state a claim upon which relief may be granted: "Nothing in this complaint comes close to stating a plausible cause of action or presenting a valid basis upon which relief could be granted. . . . This Court finds this iteration of this suit to be lacking for the same reasons that prior Courts did, and there is no basis for David to relitigate claims that he has already litigated and lost." Exhibit 6, Superior Court Disposition, at

3-4. Mr. Freeman's prior D. Mass. case was dismissed partially on the merits, where his defamation claim was found to be baseless, and partially for lack of standing. While the dismissal for lack of standing may not be "on the merits", it is nevertheless preclusive as it pertains to Mr. Freeman's continued standing to challenge the December 4, 2024 incident on constitutional grounds. *See, supra,* Fn. 1.

The question of "sufficient identity" of the parties is easily resolved – Mr. Freeman has repeatedly named the Newton Defendants as defendants in his prior lawsuits, satisfying the second element of *res judicata*. *See Raytheon*, 334 F. Supp. at 524.

Since all of the causes of action asserted in Mr. Freeman's current complaint are either identical to, or at the very least, arise out of the same "transaction, or series of connected transactions" as those alleged in his prior suits, there is also "sufficient identity" between the causes of actions in the present case and his prior lawsuits. *Raytheon*, 334 F. Supp. 3d at 524. The First Circuit takes a "transactional" approach to determining "sufficient identity" of causes of action. "First, we look to 'whether the facts are related in time, space, origin or motivation,' second to 'whether they form a convenient trial unit,' and third, to 'whether their treatment as a unit conforms to the parties' expectations.'" *In re Iannochino*, 242 F.3d 36, 46 (2001). The facts Mr. Freeman has asserted across his complaints are nearly identical, satisfying all three of these requirements. All four of his lawsuits against the Newton Defendants to date have raised constitutional claims for the service of court documents and other policing efforts associated with Mr. Freeman's alleged violations of M.G.L. Ch. 209A. All four of his suits have invoked § 1983 as the grounds for his various substantive and procedural due process, fourth amendment and equal protection violations. The earlier iterations of Mr. Freeman's complaint lacked some of the formalities of his present complaint, which meant that he did not specifically label his allegations using the same terms he

applies here. Nevertheless, where he has been proceeding as a pro se litigant, prior Courts have generously interpreted his "creative" legal theories as if they constituted well-pled § 1983 allegations, and assessed and dismissed his claims on those grounds:

> Construing the complaint – and its creative theories of legal redress – in a light most favorable to David, perhaps he is seeking relief under 42 U.S.C. § 1983, the Americans with Disabilities Act, or under a general negligence theory. Either way, nothing in this complaint comes close to stating a plausible cause of action or presenting a valid basis upon which relief could be granted.

Exhibit 6, Superior Court Disposition, at p. 3. In sum, although the language Mr. Freeman has used to describe his allegations has differed slightly from one complaint to the next, he has repeatedly challenged the same conduct, on approximately the same constitutional grounds. Where all of his lawsuits to date have derived from an identical "common nucleus" of facts surrounding the state court ch. 209A proceedings, there is sufficient identity in the causes of action across these cases to preclude this matter on *res judicata* grounds.

Since other Courts have already litigated Mr. Freeman's allegations against the Newton Defendants to final judgment on the merits, this case must be dismissed on *res judicata* grounds.

### B. Mr. Freeman's Claims Are Barred By the Anti-Injunction Act and Abstention Doctrine.

Should this court decline to find that all of Mr. Freeman's claims in the current lawsuit are precluded by decisions in his prior cases, it should take guidance from Judge Talwani in her decision in *Freeman v. Andreson*, C.A. No. 25-cv-11544-IT, (D. Mass. June 27, 2025), attached as Exhibit 10, and hold that the Anti-Injunction Act, 28 U.S.C. § 2283, and *Younger* abstention principles prevent Federal Court intervention in this action.

As Judge Talwani cited in her *Anderson* decision, "Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief

from error, if any, through the state appellate courts and ultimately [the United States Supreme Court]," *Atl. Coast Line R. Co. v. Bhd. Of Locomotive Eng'rs,* 398 U.S. 281, 287 (1970), and "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgements." 28 U.S.C. § 2283. The only circumstances in which an injunction may be deemed necessary to aid in the court's jurisdiction is (1) when the action originated in state court, but was removed to a federal court or (2) in certain *in rem* or *quasi in rem* proceedings. 28 U.S.C. § 2283 (2000).

Judge Talwani's decision also touched upon the *Younger* abstention, but noted that it did not apply to that specific case before her because it is intended to apply only to state court criminal proceedings, and the state court cases underlying that case were family and probate matters. The *Younger* abstention stands for the proposition that "principles of equity and comity demand that a federal court abstain from entertaining a suit that seeks to enjoin a state criminal prosecution as violative of federal law so long as the state proceeding affords an adequate opportunity to raise the federal defense and abstention will not cause irreparable harm." *Younger v. Harris*, 401 U.S. 37 (1971). The only exception to *Younger* are cases where the threat of irreparable injury is "both great and immediate." Such circumstances are extraordinary, and are limited to circumstances where, for example, there is a state law, the enforcement of which would be "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Safe Haven Sober Houses, LLC v. City of Boston*, 517 F. Supp. 2d 557, 561-62 (2007).

As in *Anderson*, Mr. Freeman's current complaint asks this court to halt state court proceedings, with the significant difference that the matters underlying this lawsuit are, in fact,

criminal cases subject to the *Younger* abstention. To this end, all of the principles of abstention and the Anti-Injunction Act cited in Judge's Talwani's decision, and the additional principles of the *Younger* abstention apply. Mr. Freeman's complaint is very clear on its first page that he is only seeking declaratory and injunctive relief from this Court, and all counts of his complaint (beyond merely Count VII, titled "injunctive relief") asks this Court to intervene in the state court criminal proceedings by reviewing and issuing rulings on evidentiary or process matters relevant to those cases. Since this case did not originate in state court, and it does not touch upon *in rem* or *quasi-in rem* matters, neither of the exceptions to the Anti-Injunction Act apply, and Mr. Freeman's complaint is barred accordingly. Moreover, as his recent docket filings demonstrate (*see, e.g.,* Dkt. No. 63), he is currently in a Florida state-level prison pending extradition and state court criminal proceedings in Massachusetts. He may the challenges that he asserts here as defenses in those criminal proceedings, and may proceed to a trial on the merits of the allegations against him. *See Safe Haven*, 517 F. Supp. 2d at 567 (trial on the merits and available appellate avenues adequately addressed plaintiff's concerns). He may also receive "relief from error, if any, through the state appellate courts." *Atl. Coast Line R.,* 398 U.S. at 287.

As neither of the exceptions to the Anti-Injunction Act, nor exceptions to the *Younger* abstention principles are present in this case, this Court is prohibited from granting the relief Mr. Freeman seeks, and his case must be dismissed accordingly.

### C. Failure to State A Claim Upon Which Relief May Be Granted

As a final matter, beyond the procedural barriers set forth above, Mr. Freeman's complaint fails to raise any plausible entitlement to relief, and it is therefore subject to dismissal on F.R.C.P. Rule 12(b)(6) grounds. The present Complaint is a bundle of conclusory allegations, tied together by implausible factual predicates. The Complaint fails to connect the alleged conduct of the

defendants with the specific elements required to state a claim for any of his alleged constitutional grievances. Beyond these threshold issues, Plaintiff's complaint fails to state an actionable civil rights claim against the Newton Defendants as municipal entities under the standard set forth in *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 685, 694 (1978).

*1. Failure to Allege Monell Liability*

A municipality can only be held liable under § 1983 "where the municipality *itself* causes the constitutional violation at issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original). A plaintiff raising due process, first amendment, and equal protection claims like those advanced in Mr. Freeman's complaint is required to plead that the civil rights violations arose as a result of a municipal custom, policy, or practice. *Monell*, 436 U.S. at 694 (1978); *Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, 36 (2010). In other words, a municipality cannot be held liable simply for employing a tortfeasor under a *respondeat superior* theory. *Monell*, 436 U.S. at 691. Mr. Freeman therefore cannot simply plead that certain, or even a group, of Newton Police Officers violated his rights. He must establish that some "custom, practice, or policy" of civil rights deprivation was the "moving force [beyond] the constitutional violation," *Monell*, 436 U.S. at 694, and that the alleged policy was "so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011), or in the alternative, that "a person with final policy making authority caused the supposed constitutional injury." *Rodriguez v. Municipality of San Juan*, 659 F. 3d 168, 181 (1st Cir. 2011).

Mr. Freeman's complaint fails to allege any custom, policy or practice by the Newton Defendants that have resulted in a violation of his civil rights, nor does it raise a viable "final policy maker" argument. The discrete grievances outlined in his purported counts all reference individual actions and decisions, and there is no factual support included anywhere in his pleadings

that these encounters can be considered a broader municipal policy or custom. There are no allegations that a "final policy" maker directed these actions. While former Chief George McMains (now retired) is named as a Defendant in his official capacity, he is not included anywhere in Mr. Freeman's complaint. At best, Mr. Freeman has alleged that he has had several isolated interactions with the Newton Police. The Newton Police have regular contact with many parties, particularly those like Mr. Freeman who are subject to numerous applications for criminal complaints. There is no plausible allegation that the manner or method of contact between the NPD and these individual is carried out in an unconstitutional way as a matter of policy.

*2. Failure to Plead Necessary Elements*

Beyond this threshold deficiency, Mr. Freeman's complaint also fails to allege facts that establish any of the elements of his purported civil rights claims under § 1983. His Complaint includes four counts asserting procedural or substantive due process violations (Counts I, II, VI and VIII), one count alleging a First Amendment violation (Count III) and one count alleging an equal protection claim (Count V).

Mr. Freeman's equal protection claim asserted in Count V is the easiest to dispose of. Equal protection is the promise of equal application of the law to all parties similarly situated, despite a party's race, religion, or membership in any protected class. *See Barrington Cov Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp.*, 246 F. 3d 1, 7 (1st Cir. 2001). Mr. Freeman's claim that he has been subject to criminal proceedings after reporting a crime himself is not akin to an allegation that he has been deprived equal protection of the laws because of his race or religion. There are no factual predicates in his complaint that support his allegation that he has, in any way, been treated

differently from those "similarly situated" beyond a conclusory claim of such in Count V. This Count should be dismissed accordingly.[2]

Next, Mr. Freeman's procedural due process claim is required to plausibly plead facts that suggest that, on balance, the following factors favor his position: "(1) the private interest that will be affected by the official action alleged to be due process violation, (2) the risk of an erroneous deprivation of such interest through the procedures used, and (3) the Government's interest." *Figueroa-Garay v. Rio Grande*, 364 F. Supp. 2d 117 (D. P. R. 2005). Here, Mr. Freeman claims he has run up against due process violations in the course of the state court criminal proceedings against or involving him. As a threshold matter, he has listed both the Newton Police, City of Newton, and the Newton District Court as parties to this count, and it is not clear to what degree he alleges each party was involved in the purportedly civil rights affecting actions. His allegations of "issuing and maintaining criminal process . . . probable cause determination or proper notice" and concealment of court transcripts are not properly raised against the Newton Defendants. Complaint, Count I. While the NPD is the criminal enforcement agency for the City of Newton, it does not "issue criminal process" or "probable cause determinations", nor is it the custodian of the cited court hearing transcripts.

These procedural due process allegations all amount to claims of legal error that can be corrected in the normal course of criminal proceedings – if Mr. Freeman has truly been subject to criminal proceedings without probable cause, he may raise this defense in those proceedings. His recent docket filings explain that he has been arrested in Florida, possibly awaiting extradition to Massachusetts. If he is ultimately charged with any of the offenses for which he has been arrested,

[2] Mr. Freeman's complaint claims that this burglary took place in Watertown, Massachusetts. His equal protection is factually and facially deficient for many reasons, one of which being that he has not explained why he feels the NPD had an obligation to investigate this crime that purportedly occurred outside of their jurisdiction.

he will be afforded the full panoply of trial rights and appellate procedures. As a result, the risk of "erroneous deprivation" of his rights is low, particularly when compared to the government's interest in arresting parties in connection with duly issued warrants associated with alleged violations of M.G.L. ch. 209A abuse protection orders.

Count II of the complaint contains Mr. Freeman's purported substantive due process claim. This count appears to arise out of the December 4, 2024 incident, which the earlier D. Mass. Case found Mr. Freeman does not have standing to pursue. Mr. Freeman still does not have standing to pursue allegations associated with this incident on behalf of his ex-wife, and this count is subject to dismissal accordingly. Because he lacks standing to pursue this claim, he cannot establish that he has "suffered the deprivation of an established life, liberty or property interest." *Harris v. Adams*, 757 F. Supp. 3d 111 (D. Mass. 2024). In addition, although he has incorporated the phrase "conscience-shocking" into this complaint, he has not actually plead facts that plausibly establish that the NPD or Newton Defendants generally engaged in conscience-shocking behavior, as is necessary to sustain this claim. An act that "shocks the conscience" must be "truly outrageous, uncivilized, and intolerable and the requisite arbitrariness and caprice must be stunning, evidencing more than humdrum legal error." *Bronson v. Town of South Kingston,* 766 F. Supp. 3d 336 (D. R.I. 2025). This court has previously held that even if an actor has violated a state law in bad faith, their behavior is not "conscience-shocking" unless it is "stunning." *Pagan et al. v. Calderon,* 448, F.3d 16, 33 (1st Cir. 2006). Even if, as Mr. Freeman seems to suggest, the NPD edited their police reports in bad faith, his allegations do not amount to "stunning" behavior. He has not clarified what he feels the text originally said, how it was edited, or how he believes those edits affect him. Police Officers regularly issue, amend, and add-on to police reports as investigations develop in the course of their regular job responsibilities. Mr. Freeman's complaint

does not plead facts that suggest this instance of this behavior was so "conscience-shocking" that it amounts to a due process violation.

Counts IV and VIII of Mr. Freeman's claims raise allegations about transcripts and "access to courts" that, when generously construed, may also be considered due process claims. To the extent that the allegations in these counts (such as denial of access to transcripts) are duplicative of Count I and II, they are subject to dismissal on the same grounds. Otherwise, the claim Mr. Freeman appears to be making that he has been prevented from accessing federal courts for purposes of litigating federal civil rights claims is, frankly, laughable. Section I(B) of this memorandum sets forth just the litigation known to the Newton Defendants that Mr. Freeman has filed in the last year – he has filed at least *twelve* such cases, which certainly demonstrates sufficient access to the court system on his part. The actions he claims the Newton Defendants took to chill his rights to pursue the D. Mass. Case also appear to have arisen after the case was already dismissed. The case was dismissed in June of 2025, and therefore could not have been affected by service of documents in November 2025. *See Complaint*, ¶ 47. Additionally, as must be restated, all of Mr. Freeman's prior cases against the Newton Defendants have been dismissed, and many of those dismissals called his claims "frivolous." He cannot avoid criminal allegations merely by filing a frivolous lawsuit against the arresting agency, or the court issuing the arrest warrant. As such, his allegations in Counts IV and VIII also fail to state any form of due process violation against which relief may be granted.

Count III of Mr. Freeman's complaint purports to raise a First Amendment retaliation claim through a claim that Mr. Freeman engaged in "protected speech" by reporting the burglary to his business and filing his civil rights lawsuits, and was met with "retaliatory conduct" in response. The "retaliatory conduct" Mr. Freeman claims occurred is not well-described, but it appears to

refer to the service of summons and warrants associated with the M.G.L. ch. 209A orders. To succeed on a First Amendment retaliation claim, a plaintiff must prove: "(1) he or she engaged in constitutionally protected conduct, (2) he or she was subjected to adverse action by the defendant, and (3) the protected conduct was a substantial or motivating factor in the adverse action." *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 43 (1st Cir. 2021). Mr. Freeman's complaint does not contain sufficient factual grounds to plausibly assume that he has been served with court documents in retaliation for filing a lawsuit or reporting a crime, rather than because a court has determined there is probable cause to find that he has committed a crime. Moreover, his claim is akin to one for "retaliatory arrest", as he has since been arrested in connection with the summons, warrants, and contact regarding criminal proceedings that he claims were "retaliatory." The claim of a retaliatory arrest requires a plaintiff to demonstrate that their arrest was not supported by probable cause. *Nieves v. Bartlett,* 587 U.S. 391, 401 (2019). There can be "no dispute" that his "arrest was supported by probable cause" when "[a] state court judge expressly found there was probable cause to believe" Mr. Freeman committed the complained of criminal offences, and "issued a warrant for [his] arrest." *Ortolano v. City of Nashua*, 766 F. Supp. 3d 328, 333 (D.N.H.), *reconsideration denied*, 769 F. Supp. 3d 96 (D.N.H. 2025). Accordingly, there are no plausible grounds to believe that Mr. Freeman's previous contacts with the NPD, and his recent arrest, were retaliation for constitutionally protected speech, rather than expected proceedings in the normal course of criminal law.

## IV. CONCLUSION

Accordingly, and for the foregoing reasons, the Newton Defendants respectfully request that this Court enter an order dismissing all claims asserted against them in the present action.

Respectfully submitted,
THE DEFENDANTS,
CITY OF NEWTON, THE NEWTON POLICE DEPARTMENT, AND GEORGE MCMAINS in his capacity as former Chief of Police of the City of Newton,
By their attorney,

Kristen N. Annunziato (BBO #706923)
kannunziato@newtonma.gov
Assistant City Solicitor
City of Newton Law Department
1000 Commonwealth Avenue
Newton Centre, MA 02459
Tel: 617-796-1240

DATE: February 25, 2026

## LOCAL RULE 7.1 CERTIFICATION

I hereby certify, pursuant to Local Rule 7.1(a), that I conferred with the Plaintiff, David Freeman, as he is proceeding pro se in this matter, in a good faith attempt to resolve or narrow the issues presented by this motion. The parties have not reached an agreement on the contents of this motion.

Kristen N. Annunziato, Esq. (BBO #706923)

Dated: February 25, 2026

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system, and will be sent electronically to the registered participants identified on the Notice of Electronic Filing (NEF).

Kristen N. Annunziato, Esq. (BBO #706923)

Dated: February 25, 2026